**Robert Maxwell WATTS, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 4736.**

United States Court of Appeals,
Tenth Circuit.

March 16, 1955.

Writ of Certiorari Denied

May 23, 1955.

See 75 S.Ct. 785.

Harold D. Reed, Denver, Colo. (Frank A. Bruno and Anthony F. Zarlengo, Denver, Colo., were with him on the brief), for appellant.

Robert D. Inman, Asst. U. S. Atty., Boulder, Colo. (Donald E. Kelley, U. S. Atty., Denver, Colo., was with him on the brief), for appellee.

Before PHILLIPS, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

The United States Supreme Court 348 U.S. 905, 75 S.Ct. 311, vacated the judgment of this court[1] and remanded the case by mandate which in part states, "for consideration in the light of Holland v. United States, 348 U.S. 121, 75 S.Ct. 127; Friedberg v. United States, 348 U.S. 142, 75 S.Ct. 138; Smith v. United States, 348 U.S. 147, 75 S.Ct. 194 and United States v. Calderon, 348 U.S. 160, 75 S.Ct. 186, decided by this Court December 6, 1954. We have not considered the merits of these cases, nor have we determined their relationship to our recent opinions, supra, believing that reexamination by the Courts of Appeals is desirable even in those cases remotely involving the principles laid down in the net worth decisions."

In compliance with the mandate of the Supreme Court, we have given the case further consideration. A reexamination of the record reveals that in the trial of the case the Government relied in part upon net worth but in a large measure upon specific transactions to establish additional unreported income for the calendar year 1946. There were numerous specific transactions during 1946 from which the Government contended taxable income resulted which were not reported. Among these transactions were the following: 1. The Biggins Transaction. Biggins was indebted to the Moffat County State Agency[2] for the purchase of a home. After a dispute as to the exact amount, Biggins gave two checks totalling $1,500 to the Moffat County State Agency, which were endorsed by appellant and deposited to his personal account; 2. Appellant received payment for construction services from Kerlyn Oil Company the sum of $1,567.01; 3. Stanton and Associates paid him $237.00; 4. Roope paid an indebtedness to the Moffat County State Agency in the sum of $1,183.35, which appellant deposited to his personal account; 5. Appellant received payment for work and labor done from Pueblo Housing Corporation the sum of $3,500; 6. Morgan and Terrill, a partnership, was indebted to appellant for construction work, and appellant had them pay one Paul Duncan the sum of $1,433.07 for an automobile, for himself, for which appellant then credited the partnership on their account for $1,500; 7. Appellant received 85 shares of stock from the Moffat County Agency of the par value of $8,500 for construction services rendered; and 8. Appellant sold a house, located at 901 Security Street, Pueblo, Colorado, in 1946, for $11,500, which because of the nature of the transaction at the time the house was built by appellant the Government contends the entire $11,500 was taxable income.

It was the Government's contention that all of these items as well as others constituted taxable income for the year in question. Whether these items constituted taxable income to appellant was a disputed issue of fact depending upon whether the jury believed the Government's version of these transactions or that tendered by appellant.

In addition to the above the Government introduced five financial statements prepared and signed by appellant and submitted by him to a bank to establish a line of credit. Objection was made at the time of trial by appellant to some of the evidence relating to net worth as well as to the court's instructions pertaining to net worth. However, when appellant appealed to this court, he completely abandoned his objections to the evidence with respect to that phase of the case or the instructions of the court relating thereto. No assignment of error in appellant's brief is predicated thereon and no argument was made in this court with respect to that phase of the case. In fact, appellant's brief before this court does not contain the words "net worth". Accordingly, when

---

1. Opinion reported in 212 F.2d 275.

2. Appellant's corporation.

the case came before us we decided it on the issues presented to us. These issues are reflected in our opinion and need not be restated herein.

■ The general rule is that errors relied on for reversal in order to be entitled to consideration must be specifically pointed out in accordance with applicable rules of practice. It is not the duty of an appellate court to search the record for error not urged by the parties.[3] There is a plethora of authority holding that a point not briefed or argued may be treated as waived.[4] Rule 19, subd. 3, Second of our court provides that, "A specification of the points relied upon shall set out separately and particularly each point asserted and intended to be urged."

■ We are not unmindful of the inherent power of our court to note error of our own accord if we deem it grave or fundamental. This rule is well recognized and has been adhered to by our court in a number of cases.[5] In view of the mandate of the Supreme Court directing us to examine the issue of net worth in light of what that court said in Holland v. United States, decided December 6, 1954, and kindred cases, we have done so and are of the view that the Government's evidence with respect to net worth fully meets all the tests laid down by the Supreme Court in the Holland case. The Government was not in this case, as in the Holland case, forced to rely upon circumstantial evidence and financial facts to reconstruct the taxpayer's financial statement in order to establish increases in net worth during the period in question. Here it relied entirely upon the five financial statements prepared in detail by appellant and filed with a bank for a line of credit. These financial statements were prepared as of August 17, 1943, March 15, 1944, April 28, 1945, April 20, 1946 and January 1, 1947. These financial statements showed appellant's net worth as follows: On August 17, 1943, $49,895; on March 15, 1944, $64,252.52; on April 28, 1945, $87,202.50; on April 20, 1946, $96,090.70; and on January 1, 1947, $123,494.84. By comparing the net worth reflected in the inventory of any year with the statement for the preceding year, we have a beginning as well as an ending inventory. From the sums reflected as net forth in these statements must be deducted those sums which augmented appellant's net worth but do not reflect cash income. A comparison of his April 20, 1946, and January 1, 1947 financial statements shows that the accounts receivable reported in his 1946 statement increased by $1,661.29; that the 85 shares of stock received by him from the Moffat County State Agency for which he gave credit to the company in the sum of $8,500 was listed on that statement at $13,500. $5,000 of such listed value must therefore be considered as an increase in value of this stock and not as taxable income. Watts testified that his one-half interest in 220 lots in Craig, Colorado, which he listed at a value of $5,500 in his January, 1947, statement, was actually worth $1,650 when he got it. Assuming that all this increase in value occurred in 1946, there must then be deducted from the net worth the sum of $3,850 as not represented as taxable income. Deducting these items in the total sum of $10,511.-29 from the increase in the net worth for the part of the year 1946 represented by the January 1, 1947, financial statement leaves unaccounted an increase in the net worth during this portion of 1946 of $16,729.69. This does not take into account living expenses during 1946 which must have been considerable and also reflect additional income.

3. 24 C.J.S., Criminal Law, § 1812, p. 640.

4. Kreuzer v. United States, 8 Cir., 254 F. 34; Schwyhart v. United States, 8 Cir., 82 F.2d 725; United States v. Mansavage, 7 Cir., 178 F.2d 812; Utley v. United States, 9 Cir., 115 F.2d 117; Kahn v. United States, 6 Cir., 20 F.2d 782; Cornes v. United States, 9 Cir., 119 F. 2d 127.

5. Crabb v. United States, 10 Cir., 99 F.2d 325; Edgmon v. United States, 10 Cir., 87 F.2d 13; Kelly v. United States, 10 Cir., 76 F.2d 847; Williams v. United States, 10 Cir., 66 F.2d 868; Lewis v. United States, 10 Cir., 92 F.2d 952.

486

■ The unexplained net worth increase, as reflected by the January 1, 1947, financial statement, of $16,792.69 did not stand unsupported and uncorroborated. The Government did adduce additional evidence of likely sources of unreported taxable income which might account for the increased net worth shown on the 1946 statement. Leslie H. Ward, Enforcement Counsel of the Board of Internal Revenue, testified to a conference he had with Watts and his attorney respecting ten specific items which the Government contended constituted taxable income. According to his testimony, Watts in effect admitted that seven of the items totalling approximately $19,987 should have been returned as income. This sum proximates the unaccounted increase in the net worth of 1946 plus the reported income of $4,556. The Government's version of what occurred in this conference, if believed by the jury, as it no doubt was, would meet the burden resting on the Government under the Holland decision and warrant a submission of the case to the jury under proper instructions.

■ Neither do we think the court's instruction as to the theory of net worth is erroneous. The instruction is set out verbatim in Footnote 6. What the court in effect told the jury was that if it found a substantial increase in net assets constituting net worth and such increase was not due to the appreciation in value of assets on hand at the beginning of the accounting period and did not reflect increases in assets purchased with money shown to have been received by way of inheritance or gift, and if such sum spent for such additional assets is substantially in a sum larger than the amount he had been reporting in his income tax returns, the jury was entitled to take that into account and could infer that the money was income which he did not report, and if the amount was large, the jury might infer that he knew that he was understating his income. We think that correctly stated the law as enunciated in the Holland case.

We are still of the opinion that in view of the fact that the Government introduced evidence as to the unreported numerous specific transactions from which the jury might conclude that substantial income resulted and that in view of the fact that appellant apparently concluded that no reversible error occurred because of the net worth evidence presented by the Government, by failing to urge that question on appeal he waived it and may not now be heard to complain. But in any event and considering the net worth theory of the case, no reversible error occurred. To illustrate, no doubt the jury refused to believe Watts' testimony that the 85 shares of stock became totally worthless and that he was therefore not required to report it in his 1946 income tax. This the jury would be warranted in concluding from the fact that on January 1, 1947, in his financial statement he ascribed a value to this stock of $13,500, which he on the stand claimed was totally worthless in 1946.

Affirmed.

6. "Now, one theory in the government's case is that this man's net worth increased in a substantial sum of money. That is to say, starting out at the beginning of a period with a determination of the value of what he owned and then finding that at the end of the period that the value of what he owned was substantially greater, and that that increase in net worth was due to the acquisition of additional assets and not confined merely to increase in the increment, appreciation in value of the assets he formerly had; the government claims that if he, during that time, made purchases, spent money, and that sum of money which he spent is substantially in excess of what he reported on his income tax return, and that that money is not shown to have been inherited or received by him by way of a gift, it is reasonable to infer that he derived the money from earnings, from income, and if that sum of money is substantially in a sum larger than the amount he has been reporting on his income tax return you, ladies and gentlemen of the jury, are entitled to take that into account.

"You may infer that the money was income that he didn't report, and you may infer, if the amount is larger and substantial, that he knew or must have known that he was understating his income."