FILED
United States Court of Appeals
Tenth Circuit

November 27, 2012

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

FRANK BROWN,

      Plaintiff - Appellant,

v.

SCRIPTPRO, LLC,

      Defendant - Appellee.

No. 11-3293

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 2:10-CV-02296-JAR)**

Alan V. Johnson, (and Danielle N. Davey of Sloan, Eisenbarth, Glassman, McEntire & Jarboe, L.L.C., on the briefs), Topeka, Kansas, for Plaintiff - Appellant.

Jennifer M. Hannah (and Matthew K. Corbin of Lathrop & Gage, L.L.P., on the brief), Overland Park, Kansas, for Defendant - Appellee.

Before **KELLY**, **HOLLOWAY**, and **MATHESON**, Circuit Judges.

**KELLY**, Circuit Judge.

      Plaintiff-Appellant Frank Brown filed this action against his former

employer Defendant-Appellee ScriptPro, LLC, alleging violations of the Family

Medical Leave Act (FMLA), the Fair Labor Standards Act (FLSA), and Title VII of the Civil Rights Act of 1964 based on his termination in November 2008. The district court granted summary judgment in favor of ScriptPro, and Mr. Brown appeals. See Brown v. ScriptPro, LLC, No. 10-2296-JAR, 2011 WL 3880855 (D. Kan. Sept. 1, 2011). Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

Background

In reviewing the grant of summary judgment, we view the facts presented in the light most favorable to the nonmoving party. Jones v. Denver Pub. Sch., 427 F.3d 1315, 1318 (10th Cir. 2005).

ScriptPro develops, manufactures, markets, and sells automated prescription drug dispensing systems and related software. Aplt. App. 29. Mr. Brown worked for ScriptPro as a Customer Service Operations analyst from March 2007 until November 21, 2008. Id. at 7–9. Tammy Becker directly supervised Mr. Brown until approximately November 2007. Id. at 188. Mark Eaker supervised Mr. Brown thereafter. Id. At all relevant times Shane Coughlin, the Vice-President of Customer Service, was the head of Mr. Brown's department. Aplee. App. 40.

ScriptPro required immediate supervisors to complete written performance reviews of their subordinates each year. Aplt. App. 97. Ms. Becker prepared Mr.

Brown's July 2007–June 2008 performance review, and Mr. Eaker presented it to him.  Id. at 189.  Mr. Brown earned an "MR" ("Meets job requirements in a fully satisfactory manner") for "Quality of Work—Customer Service" and an "RE" ("Rarely equaled in exceeding job requirements") for "Attendance."  Id. at 100.  He earned an MM ("Marginal performance which must be improved"), however, for both "Planning and Organization of Work" and "Work Relationships."  Id.

The written evaluation included narrative comments in addition to the scores.  Narrative comments for "Quality of Work—Customer Service" indicated:

> Still in the learning process of his job (retaining info).  When given an assignment he does perform solid steady work but would like to see more initiative and motivation in his role.  He did take the initiative in developing with Kristin a soft skills program for the help desk which was well done.

Id.  Narrative comments for "Planning and Organization of Work" included: "There is a concern regarding excessive internet use during working hours.  Will continue to increase his work load over the next year to see how the additional work load is handled."  Id.  Narrative comments regarding his work relationships included:

> Frank needs to be more aware of his personal boundaries at work.  He has had loud disruptive personal phone conversations at his desk.  Has a tendency to be argumentative and abrasive with other co-workers.  If another employee is having a conversation with a person he has the tendency to interrupt or jump in the middle of that conversation.  He needs to be aware of how he comes across and to back down when other people act uncomfortable.  (Example: Arguing loudly with his wife on the phone.  Employees feeling uncomfortable at the way he stares at them as they walk by his cube.  Interrupting conversations regarding

sports and getting into arguments.)

Id. Mr. Eaker discussed this written review with Mr. Brown, but they developed no specific plans or goals in response. Id. at 215–16. Mr. Brown submitted a written response to the review and, in particular, disputed the evaluation of his internet usage. Id. at 235–36.

Following the written performance review, there were several other developments. In September 2008, Dave Hoelting and Kristin Medley made complaints to Mr. Eaker about Mr. Brown's belligerence towards customers on the phone. Aplee. App. 101–02. In addition, Mr. Brown failed to complete a September 2008 project on time and to correctly complete some of his new Scorecards for grading customer service calls. Id. at 63–64. When Mr. Eaker left ScriptPro at the end of October 2008 he told Mr. Coughlin about Mr. Brown's written performance review. Aplt. App. 220. Mr. Eaker subsequently sent Mr. Brown an email indicating that he told Mr. Coughlin about the disputed review and that he thought Mr. Brown was "safe." Id. at 220, 243.

Also in October 2008, Mr. Brown asked Mr. Eaker for the paid time off (PTO) that he originally requested in March due to the birth of his second child. Id. at 270, 218. Mr. Brown alleges that he worked about eighty hours from home during the period from July 2008 to October 2008 in order to take time off when his child arrived. Id. at 198, 207. Mr. Eaker denies giving Mr. Brown permission to work from home. Id. at 219. Mr. Coughlin also told Mr. Eaker that he would

-4-

not approve any overtime. Id. at 226. Mr. Brown did not record the time he worked from home in ScriptPro's KRONOS timekeeping system. Id. at 198. ScriptPro's employee handbook does not include information about reporting overtime specifically, but it does require employees like Mr. Brown to turn in time sheets recording hours worked. Id. at 118.

ScriptPro's handbook also contains basic information regarding FMLA leave and directs employees to Human Resources for more information. Id. at 122. Notices are posted to the same effect. Id. at 195. Mr. Brown received the handbook, signed an acknowledgment form, and was aware of the notices. Id. at 68–69, 195. Neither Mr. Eaker nor any other supervisor at ScriptPro, however, advised him at any point of any further specifics of FMLA eligibility or the application process. Id. at 309.

Mr. Eaker gave Mr. Brown the PTO he requested at the end of October 2008. Id. at 218. From October 27, 2008 through November 7, 2008 Mr. Brown was out of the office. Id. at 208, 219. He argues that the first week was PTO and he worked the second week from home. Id. at 194. In his deposition, Mr. Eaker testified that only Mr. Coughlin could approve a request to work from home. Id. at 219. Mr. Brown returned to work thereafter. Id. at 208.

On November 19, 2008, Mr. Brown sent an email to Ms. Becker stating that he had an arrangement with Mr. Eaker before he left whereby Mr. Brown would work from home in order to save up hours for later use. Id. at 209. He wanted to

use some of that time in order to leave early the following day for his wife's doctor appointment.  Id.  Later that day Ms. Becker and another supervisor, Al Somers, informed Mr. Brown that such an arrangement would not be allowed.  Id. at 202–03.  Mr. Brown became angry and raised his voice at Mr. Somers; Mr. Somers raised his voice as well.  Id.  ScriptPro alleges that Mr. Brown banged his fist on the table, but he disputes this.  Aplee. App. 64; Aplt. App. 144.  Mr. Brown later apologized to Mr. Somers for his conduct.  Aplt. App. 203.

As noted, on November 21, 2008, ScriptPro terminated Mr. Brown for unresolved, previously discussed performance issues.  Id. at 228–32.  Deborah Williams and Mr. Somers advised Mr. Brown that ScriptPro was terminating his employment because of unresolved, previously discussed performance issues.  Id. at 203.  Mr. Brown's exit interview form states the same reason for termination. Id. at 105.

Mr. Brown's only remaining claims involve violations of the FMLA and FLSA.  Among other things, Mr. Brown claims that ScriptPro interfered with the exercise of his rights under the FMLA and terminated him in retaliation for exercising those rights.  We consider these points below.


Discussion

We review the district court's grant of summary judgment de novo.  Jones, 427 F.3d at 1318.  "The court shall grant summary judgment if the movant shows

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying or reviewing the application of Rule 56(a), we view all evidence in the light most favorable to the nonmoving party. Jones, 427 F.3d at 1318.

A.     FMLA Claim

The FMLA entitles a qualified employee up to twelve weeks of leave during any twelve month period "[b]ecause of the birth of a son or daughter of the employee and in order to care for such son or daughter," or "[i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(A), (C). Mr. Brown asserts his FMLA claim under a § 2615(a)(1) interference theory and § 2615(a)(2) retaliation theory. We discuss each in turn.

1. *Interference Theory*

The FMLA makes it unlawful for an employer to interfere with, restrain, or deny the exercise or attempt to exercise any right provided under the FMLA. 29 U.S.C. § 2615(a)(1). To succeed on an interference claim, an employee must show that (1) he was entitled to FMLA leave, (2) an adverse action by his employer interfered with his right to take FMLA leave, and (3) this adverse action was related to the exercise or attempted exercise of the employee's FMLA rights. Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d 1164, 1180 (10th Cir. 2006). A deprivation of these rights is a violation regardless of the employer's

-7-

intent, and the <u>McDonnell Douglas</u> burden shifting analysis does not apply. <u>Id.</u> (citing <u>Smith v. Diffee Ford-Lincoln-Mercury, Inc.</u>, 298 F.3d 955, 960, 963 (10th Cir. 2002)). An employer can defend against the claim, however, by showing that the employee would have been terminated anyway, i.e. regardless of the request for FMLA leave. <u>Id.</u>

The district court concluded that Mr. Brown provided sufficient evidence by which a reasonable jury could find (1) that he was entitled to FMLA leave and (2) that ScriptPro interfered with his FMLA rights. <u>Brown</u>, 2011 WL 3880855, at *7–9. ScriptPro disputes that Mr. Brown established these elements. Aplee. Br. 28–40. We proceed directly to the third element—the cause of Mr. Brown's termination—and ScriptPro's affirmative defense that Mr. Brown would have been terminated anyway.

Mr. Brown is correct in that timing can be particularly suggestive in determining whether termination relates to the exercise of FMLA rights. Aplt. Br. 18 (citing <u>DeFreitas v. Horizon Inv. Mgmt. Corp.</u>, 577 F.3d 1151, 1160 (10th Cir. 2009)). Mr. Brown was, in fact, fired only two days after his emails and meeting with Ms. Becker and Mr. Somers about taking time off to care for his wife and new baby. <u>Id.</u> This may be enough to prove the third element of an interference claim, especially because the employer's intent is irrelevant. <u>See</u> <u>Smith</u>, 298 F.3d at 960. ScriptPro in defense, however, provided undisputed evidence that Mr. Brown would have been terminated regardless of this or any

-8-

other FMLA-protected request.

For an employer to demonstrate that it would have terminated the employee anyway, it must provide evidence of alternative reasons for termination. See Metzler, 464 F.3d at 1180. However, summary judgment for the employer is warranted only when there is no genuine dispute as to any material fact regarding the grounds for termination. See DeFreitas, 577 F.3d at 1161–62. The question here is not whether a reasonable jury could find in favor of ScriptPro, but rather whether the evidence is so one-sided that submission to a jury is not required. Upon reviewing the record even in the light most favorable to Mr. Brown, the employer has made that showing.

First, Mr. Brown received unfavorable feedback in his only performance review, particularly in regard to his relationships with co-workers. Aplt. App. 100. Although it is true that he met or exceeded the job requirements for two categories—"Quality of Work—Customer Service" and "Attendance"—he received marginal scores that required improvement in two other categories—"Planning and Organization of Work" and "Work Relationships." Id. He also received written comments that pointed out very specific deficiencies in his work. Id. For example: "There is a concern regarding excessive internet use during working hours" and "Frank needs to be more aware of his personal boundaries at work. . . . Has a tendency to be argumentative and abrasive with other co-workers." Id. Although Mr. Brown provided a written response to some

of the criticism, id. at 235–36, it is uncontroverted that management identified and detailed specific performance issues. See, e.g., Sanders v. Sw. Bell Tel., L.P., 544 F.3d 1101, 1107 (10th Cir. 2008) (employer's view is relevant notwithstanding employee's perception).

Second, there is uncontroverted evidence of continued problems after the annual written evaluation. For example, in September 2008, co-workers Dave Hoelting and Kristin Medley made complaints to Mr. Eaker about Mr. Brown acting belligerently to customers on the phone. Aplee. App. 101–02. Ms. Becker also expressed concerns about the untimely completion of a Pentium III Project. Id. at 63. Mr. Brown disputes ScriptPro's assertion that he did not complete the Pentium III Project in October 2008. Aplt. Br. 17–18. Reading, as we must, Ms. Becker's email as a mere request for a status update, it is clear that there were at least concerns of some kind expressed about his work. Mr. Brown admitted in his deposition testimony that Ms. Becker approached him about not completing the project on time. Aplt. App. 256–57. Finally, there were various problems with his implementation of ScriptPro's new customer service scoring system, although Mr. Brown reminds us that it had only been in use for two weeks. Id. at 103; Aplt. Br. 5. Of course, we are not here to judge the wisdom of management's responses, but rather only to determine whether ScriptPro has come forward with evidence suggesting it would have terminated Mr. Brown regardless of his FMLA activities. In the aggregate, ScriptPro has come forward with strong evidence of

its dissatisfaction with Mr. Brown.

Mr. Brown argues that there are additional facts that show that ScriptPro's proffered reason for terminating him—namely for unresolved, previously discussed performance issues—is pretextual. Aplt. Br. 19–21. We recognize, however, that intent is not necessary for FMLA interference claims and that there is no burden-shifting McDonnell Douglas analysis. Metzler, 464 F.3d at 1180 (citation omitted). In other words, no pretext analysis is necessary. We therefore analyze this as an argument that Mr. Brown believes that these facts create a genuine dispute regarding ScriptPro's affirmative defense demonstration. In particular, Mr. Brown points to the fact that Mr. Eaker wrote him an email when he was leaving ScriptPro stating that he thought Mr. Brown was "safe." Aplt. App. 220, 243. He also points to the fact that he only had one written performance review and it included positive feedback. He additionally relies on the fact that he disputed one of the negative comments. He finally argues that Mr. Eaker's failure to sit down with Mr. Brown at any point to draft a list of goals, although he testified that such a meeting often occurs after an unsatisfactory evaluation, creates a triable issue.

We disagree. These facts do not create genuine issues of material fact. An issue of fact is genuine only if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Lundstrom v. Romero, 616 F.3d 1108, 1118 (10th Cir. 2010) (citation omitted). These facts are

-11-

immaterial in light of the overwhelming evidence of the performance issues identified above. Moreover, no evidence suggests that the stated reasons for termination (which do not include FMLA requests) were not the real ones.

First, Mr. Eaker's email to Mr. Brown about being "safe" does not establish a genuine issue of fact because Mr. Eaker was not involved in the termination decision and testified to not working very closely with Mr. Brown. See also Rojas v. Florida, 285 F.3d 1339, 1343 (11th Cir. 2002) (holding that differences in the evaluation of an employee's performance do not establish a genuine issue of pretext because "[d]ifferent supervisors may impose different standards of behavior, and a new supervisor may decide to enforce policies that a previous supervisor did not consider important").

Second, in regard to the lone written performance evaluation, there is no requirement that employees receive any particular amount of written feedback. In fact, ScriptPro followed its standard formal evaluation process with Mr. Brown. See Aplt. App. 97. There is simply no reasonable adverse inference a jury could draw from the lack of additional written feedback. Further, the inclusion of positive comments does not change the fact that ScriptPro expressed significant concerns regarding various other categories of performance.

Additionally, Mr. Brown's own evaluation of his performance is not enough to give rise to a material factual dispute. See Sanders, 544 F.3d at 1107. Mr. Brown certainly was entitled to dispute his negative evaluation, but on this

-12-

record, the dispute alone does not create a triable issue of fact.

Finally, Mr. Brown has not raised any genuine issue regarding a company policy of post-review goal setting. He has put forth no evidence that could create an inference that there was a company policy requiring an additional informal process of goal setting following the required formal review. See Brown, 2011 WL 3880855, at *12 (observing that "there is no evidence that was company policy, the evidence was merely that Eaker followed that practice"). Similarly, he has provided no evidence that ScriptPro deviated from its usual evaluation process in any way. We conclude that there is overwhelming, uncontroverted evidence that ScriptPro terminated Mr. Brown due to the reasons it identified.

2. *Retaliation Theory*

Unlike claims under an interference theory, FMLA claims under a theory of retaliation are subject to the burden-shifting analysis of McDonnell Douglas. Metzler, 464 F.3d at 1170 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–04 (1973)). A prima facie case of retaliation requires a showing that (1) the employee engaged in a protected activity, (2) the employer took an action that a reasonable employee would have found materially adverse, and (3) there is a causal connection between the protected activity and the adverse action. Id. at 1171. Once a plaintiff establishes the prima facie case, the burden shifts to the employer to demonstrate a legitimate, nonretaliatory reason for termination. Id. at 1172. Finally, in order to avoid summary judgment, the employee must show

-13-

that there is a genuine dispute of material fact as to whether the employer's

reasons for termination are pretextual. Id.

Again, the district court found that Mr. Brown made out a prima facie case

under this theory. Brown, 2011 WL 3880855, at *11. ScriptPro disputes that Mr.

Brown established that he engaged in protected activity at all. Aplee. Br. 42. Mr.

Brown concedes that ScriptPro satisfied its burden to articulate a legitimate

nondiscriminatory reason—unresolved, previously discussed performance

issues—for terminating Mr. Brown. Aplt. Br. 22. We proceed directly to the

alleged pretext.

At the summary judgment stage for a retaliation claim, it is "the plaintiff's

burden to show that there is a genuine dispute of material fact as to whether the

employer's proffered reason for the challenged action is pretextual—i.e. unworthy

of belief." Marx v. Schnuck Mkts., Inc., 76 F.3d 324, 327 (10th Cir. 1996)

(citation omitted) (ADA retaliation claim); see also Sabourin v. Univ. of Utah,

676 F.3d 950, 961–62 (10th Cir. 2012) (FMLA retaliation claim). The employee

can show pretext by a variety of evidence; no one type of evidence is required.

Doebele v. Sprint/United Mgmt. Co., 342 F.3d 1117, 1137 (10th Cir. 2003).

Mr. Brown argues that the temporal proximity between his November 19,

2008 request to work from home and his November 21, 2008 termination shows

that ScriptPro's alleged reasons for firing him are pretextual. But "[t]o raise a

fact issue of pretext," Mr. Brown must "present evidence of temporal proximity

-14-

plus circumstantial evidence of retaliatory motive." Metzler, 464 F.3d at 1172.

Mr. Brown fails to do this. He points to the same evidence he provided when he alleged pretext—or a genuine issue of material fact—regarding his interference claim. See supra 10–12. This evidence includes the fact that Mr. Brown (1) received an email from Mr. Eaker stating that he thought Mr. Brown was "safe," (2) only had one written performance review and that review contained positive evaluations, (3) disputed some of the negative comments contained therein, and (4) never sat down to draft a list of goals with a supervisor. We need not repeat our analysis of those claims here. Just as they fail to create a triable issue of fact regarding ScriptPro's reason for termination, they similarly fail to create a triable issue of fact as to whether that reason is pretextual. See Sabourin, 676 F.3d at 961–62.

B.    FLSA Claim

The FLSA provides that qualified employees shall be compensated for time worked in excess of forty hours per week. 29 U.S.C. § 207(a). Mr. Brown filed his FLSA claim in district court in order to receive payment for the eighty hours he allegedly worked from home between approximately July and October 2008.

To succeed on an FLSA claim for unpaid overtime, the plaintiff has the burden of proving that he performed work for which he was not properly compensated. Baker v. Barnard Constr. Co., Inc., 146 F.3d 1214, 1220 (10th Cir. 1998) (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946),

other parts superseded by statute).  It is Mr. Brown's burden to "produce[]

sufficient evidence to show the amount and extent of that work as a matter of just

and reasonable inference."  Anderson, 328 U.S. at 687.  At the summary judgment

stage, Mr. Brown must set forth specific facts showing there is a genuine issue for

trial.  See Fed. R. Civ. P. 56(e).

The district court found that Mr. Brown produced uncontroverted evidence

that he actually worked overtime.  Brown, 2011 WL 3880855, at *14.  This

evidence includes Mr. Brown's own testimony, his wife's testimony, and Mr.

Coughlin's discussion with Mr. Eaker about Mr. Brown's work at home.  Id.  The

court also found, however, that he failed to show the amount of overtime by

justifiable or reasonable inference.  Id.  We agree.

Mr. Brown chose not to enter any of the hours he allegedly worked from

home in ScriptPro's timekeeping system.  Aplt. App. 198.  He did not keep any

other record of any sort to document the hours worked.  Id.  Mr. Brown argues

that ScriptPro is responsible for keeping accurate records and the employee

cannot bear the burden of proving the precise amount of overtime worked.  Aplt.

Br. 29.  But courts only relax the plaintiff's burden to show the amount of

overtime worked where the employer fails to keep accurate records.  See Baker,

146 F.3d at 1220.  It is undisputed that ScriptPro keeps accurate records, and

employees can even access the timekeeping system from home.  Mr. Brown easily

could have entered his hours; in fact, he was required to do so.  Aplt. App. 118.

-16-

There was no failure by ScriptPro to keep accurate records, but there was a failure by Mr. Brown to comply with ScriptPro's timekeeping system. Under these circumstances, where the employee fails to notify the employer through the established overtime record-keeping system, the failure to pay overtime is not a FLSA violation. See Harvill v. Westward Commc'ns, LLC, 433 F.3d 428, 441 (5th Cir. 2005).

AFFIRMED.