**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 25, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

---

CYNTHIA MONTOYA,

    Plaintiff - Appellant,

v.

HUNTER DOUGLAS WINDOW
FASHIONS, INC.,

    Defendant - Appellee.

No. 14-1491
(D.C. No. 1:13-CV-02408-RPM)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **PHILLIPS**, **McHUGH**, and **MORITZ**, Circuit Judges.

---

    Cynthia Montoya appeals the district court's decision granting summary judgment in favor of her former employer, Hunter Douglas Window Fashions, Inc., on her claims of gender discrimination in violation of Title VII of the Civil Rights Act of 1964 and retaliation under the Family Medical Leave Act (FMLA). Because we conclude Montoya fails to show pretext for either her discrimination claim or her retaliation claim, we affirm the district court's ruling.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

BACKGROUND

Montoya worked for Hunter Douglas from 1997 to 2012. In 2008, Jeff Geist promoted Montoya to fabrication supervisor, a position requiring her to supervise 55 employees. In 2009, Montoya used FMLA leave for about three weeks. During Montoya's absence, several employees advised Geist that Montoya recently had been devoting work time to personal internet use, making her unavailable to assist employees with work matters. Geist investigated and discovered that Montoya consumed 24.5 hours during a six-week period browsing the internet for personal purposes. As a result, Geist issued Montoya a "Final Warning and Performance Improvement Plan." Aplt. App. 411. The plan generally directed that Montoya be available to her team and engaged in her work and specifically outlined certain performance expectations Montoya needed to meet including limiting internet activity to work-related tasks. The plan warned Montoya that her "[f]ailure to sustain performance expectations" outlined in the plan would subject her to "further corrective action up to and including termination." Supp. App. 82.

In 2010, Geist noted in a follow-up report that Montoya had improved her overall performance and significantly decreased her personal internet use. Later that year, Geist gave Montoya a positive performance review. In July 2011, Geist documented that he addressed an issue with Montoya regarding her negative approach to her daily work. Geist noted, in part, that Montoya was "[g]oing through the motions, and not showing much engagement in her job," and expressing displeasure about covering overtime shifts. Supp. App. 117. Geist noted that he

advised Montoya her negative approach was reminiscent of her past behavior and that she needed to be more positive. Geist attached the documentation of his July 2011 conversation with Montoya to an October 2011 performance review, but otherwise gave her a positive review.

In August 2012, Montoya experienced personal difficulties. On Friday, August 3, she took leave from work to care for her terminally ill mother. That weekend, she received treatment from a psychologist for "stress and relationship complications" after her fiancé broke off their engagement. Supp. App. 49. On Monday, August 6, she communicated with Geist by text message and phone call, informing him that she would return to work on Wednesday, August 8. On Wednesday, she left a voicemail message for the company's human resources representative Trish Devlin, saying her "doctor was taking [her] off work for the remainder of the week." App. 79. In the message, Montoya also said she would be out the following week as part of a previously scheduled vacation and that she wanted to convert those vacation days into FMLA leave.

Hunter Douglas' insurance company, CIGNA, sent the required FMLA paperwork to Montoya's home, but Montoya asserts she never received the forms. However, Montoya didn't contact Devlin or anyone else to follow up on her request for FMLA leave, and CIGNA ultimately denied FMLA leave due to Montoya's failure to submit the required certification from her health care provider. In any event, Hunter Douglas paid Montoya for the days she was absent and didn't classify her absence as FMLA leave.

While Montoya was out on leave, her coworkers and subordinates advised Geist that her job performance had slipped again. Specifically, they reported that Montoya often left early, was absent from the workplace for hours, was rarely on the production floor, was constantly on her cell phone, and used the internet to plan her wedding and visit other non-work-related websites.

Geist investigated Montoya's internet use and discovered that in the preceding two months, she had recorded more than 11,825 internet hits on non-work-related websites. This included nearly 1,800 hits on three specific retail and social media websites—macys.com, facebook.com, and menswearhouse.com. Geist also discovered that Montoya failed to complete or deliver performance reviews—some of which were overdue by six to eight months—for eight of her subordinates. Geist and Devlin confronted Montoya with their concerns about her job performance when she returned to work on August 20. Montoya acknowledged that she hadn't provided performance reviews to several of her subordinates but claimed "that things had been very busy." Supp. App. 129. She also admitted her increased personal internet use, attributing it to excitement about her wedding.

Two days later, Hunter Douglas terminated Montoya's employment. Devlin's notes reflect that Montoya received "a Final Written Warning for violating Internet usage and a Performance Improvement Plan, 11-20-09," and that "[t]he decision was made to end her employment due to violation of [the] Final Written Warning, and [her inability] to sustain requirements of [the] PIP." Supp. App. 129.

4

Montoya sued Hunter Douglas for gender discrimination under Title VII and for FMLA retaliation.[1] The district court granted summary judgment in favor of Hunter Douglas, and Montoya appeals.

## DISCUSSION

We review a district court's decision granting summary judgment de novo. *Fulghum v. Embarq Corp.*, 785 F.3d 395, 403 (10th Cir. 2015). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the facts and evidence submitted by the parties in the light most favorable to the nonmoving party. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

## I.  Montoya fails to show pretext in her gender discrimination claim.

The district court granted summary judgment on Montoya's gender discrimination claim after concluding Montoya failed to demonstrate Hunter Douglas' proffered explanation for her termination—poor job performance related to an overall lack of engagement in her work and excessive personal internet use that interfered with her supervisory duties—was pretext for gender discrimination. On appeal, Montoya essentially argues she presented overwhelming evidence of pretext. Specifically, she points to evidence (1) that Hunter Douglas didn't similarly discipline male employees who used the internet for personal use or male supervisors who delayed completion of performance reviews; (2) that Hunter Douglas failed to take into account the timing of her personal internet use or the fact that her internet

---

[1] Montoya also asserted various state law claims, but she voluntarily dismissed those claims before filing this appeal.

5

use was often work-related; and (3) that her 2009 Performance Improvement Plan ended years before her termination and couldn't have been a basis for her termination. Finally, she alleges pretext because she often worked long hours beyond her scheduled shift and received positive performance reviews, which Hunter Douglas acknowledges.

We analyze Montoya's gender discrimination claim under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, it is Montoya's initial burden to establish a prima facie case of discrimination. Once she does so, the burden shifts to Hunter Douglas to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See Lobato v. N.M. Envtl. Dep't*, 733 F.3d 1283, 1288 (10th Cir. 2013). If Hunter Douglas makes the required showing, the burden returns to Montoya to show a genuine dispute about whether the proffered explanation was pretext for discrimination. *See id*. at 1289. Montoya may establish pretext by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1267 (10th Cir. 2015) (quoting *Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1280 (10th Cir. 2010)).

Notably, the primary bases Hunter Douglas cited as impacting Montoya's job performance and supporting termination—her excessive internet use and overdue

6

performance reviews—aren't really disputed. Instead, regarding her internet use, Montoya suggests Hunter Douglas tolerated personal use from other employees, including men, thus demonstrating pretext. For its part, Hunter Douglas acknowledges that it tolerated occasional personal internet use despite its written policy strictly prohibiting it. But Hunter Douglas points out that it extended such tolerance only as long as an employee's limited use didn't interfere with work performance.

And therein lies the rub for Montoya. The record demonstrates that Montoya's personal internet use far exceeded limited personal use[2] and that Hunter Douglas attributed her work performance issues (including that she was several months behind in delivering performance reviews and not always responsive to her subordinates' needs) to that excessive use. Nor does Montoya dispute that several of her coworkers complained about Montoya's performance issues in August 2012, including her frequent practices of leaving early and taking long lunches, her favoritism toward certain employees, and her non-responsiveness to their issues.

Moreover, while Montoya accuses some male employees of personal internet use and identifies others who delivered delayed performance reviews, she fails to identify a single male employee treated differently under similar circumstances.

---

[2] The district court found that Montoya "visited 20,761 websites including" nearly 1,800 visits to three specific retail websites between June 1 and July 31, 2012. App. 413. The record actually demonstrates 20,761 hits on websites rather than visits to 20,761 different websites. And at least some of those more than 20,000 hits were on work-related websites. But Geist's notes list a sample of seven unauthorized websites that account for 11,825 hits, including the nearly 1,800 hits on macys.com, facebook.com, and menswearhouse.com—websites that Montoya concedes aren't work related.

Specifically, she hasn't identified any male employee who had similar excessive personal internet use that negatively affected his job performance, such as failing to complete performance reviews or becoming disengaged from subordinates.

Thus, Montoya has failed to point to any evidence to show that Hunter Douglas' reason for her termination was so implausible, incoherent, or contradictory that Hunter Douglas "did not act for the asserted non-discriminatory reason[]." *Bennett*, 792 F.3d at 1267. Accordingly, she has failed to meet her burden to show a genuine dispute as to pretext and we affirm summary judgment in favor of Hunter Douglas on her gender discrimination claim.

## II. Montoya fails to show pretext in her FMLA retaliation claim.

Next, Montoya argues the district court erred in finding she failed to state a prima facie case with respect to her claim that Hunter Douglas terminated her employment in retaliation for her request for FMLA leave.

We analyze retaliation claims under the *McDonnell Douglas* framework, which in this context requires that Montoya bear the initial burden of establishing a prima facie case of retaliation by showing that (1) she engaged in a protected activity, (2) Hunter Douglas took an action that a reasonable employee would have found materially adverse, and (3) there is a causal connection between the protected activity and the adverse action. If Montoya establishes a prima face case, then Hunter Douglas must offer a legitimate, nonretaliatory reason for her termination. Montoya then bears the burden of showing the reason is pretextual. *See Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170-71 (10th Cir. 2006).

As with her gender discrimination claim, Montoya fails to direct our attention to evidence, other than temporal proximity,[3] creating a genuine issue of material fact as to pretext. *See Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1230 (10th Cir. 2012) (noting that an employee must present circumstantial evidence of retaliatory motive in addition to evidence of temporal proximity to raise a fact issue as to pretext). Instead, Montoya offers only her personal opinion that Hunter Douglas "did not like [employees] taking FMLA leave[]," and subtly discouraged it. Aplt. App. 279. But she offers no admissible evidence of Hunter Douglas routinely denying employee requests for FMLA leave or retaliating against any other employee for requesting it.

Thus, assuming Montoya established a prima facie case of retaliation, we conclude Hunter Douglas has offered a legitimate, nonretaliatory reason for her termination and Montoya hasn't met her burden to show a genuine dispute as to whether that reason was pretextual.

We affirm the district court's grant of summary judgment in favor of Hunter Douglas.

Entered for the Court

Nancy L. Moritz
Circuit Judge

---

[3] Montoya requested FMLA leave on August 8, 2012. Hunter Douglas terminated her employment two weeks later on August 22, 2012.