**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 16, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MARK ANTHONY CARTER,

    Plaintiff - Appellant,

v.

SPIRIT AEROSYSTEMS, INC.;
INTERNATIONAL ASSOCIATION OF
MACHINISTS & AEROSPACE
WORKERS, DISTRICT LODGE NO. 70
(IAMAW) regarding Local Lodge #839;
FOULSTON SIEFKIN LLP, Attorneys at
Law; UNITED STATES DEPARTMENT
OF LABOR, Wage and Hour Division,

    Defendants - Appellees.

No. 19-3228
(D.C. No. 6:16-CV-01350-EFM)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **BALDOCK**, and **CARSON**, Circuit Judges.
_____

Plaintiff-Appellant Michael Carter worked as a mechanic for Defendant-

Appellee Spirit Aerosystems, Inc. ("Spirit") beginning in 2011. Spirit designs and

manufactures commercial aircraft components. While employed with Spirit, Carter

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

was a member of the International Association of Machinists and Aerospace Workers (IAM), a labor union. From 2012 until his separation from employment with Spirit, Carter suffered from chronic, intense, debilitating migraines. He was approved for both intermittent and continuous leave under the Family and Medical Leave Act (FMLA) during his employment.

Spirit maintained two different policies related to absence and attendance: OP3-177 (the "General Leave of Absence" policy) and OP3-178 (the "Attendance and Punctuality" policy). The former required employees to report any absence to Spirit's Benefits Center within three days in order to have leave approved under the FMLA. The latter required that, if the need for an unexpected absence arose, employees must notify their manager within thirty minutes of shift start time. OP3--177 specified that "[n]othing in this procedure is intended to relieve an employee's responsibility to notify management or the Absence Reporting Line . . . of unscheduled absences and/or late arrivals in accordance with OP3-178." Aplt. App. Vol. 1 at 209.

On December 4, 2014, Carter received a documented verbal warning for personal misconduct because he failed to give notice to his supervisor of unscheduled absences or late arrivals on four prior occasions. Three of the four missed days were due to approved, intermittent FMLA leave. On January 19, 2015, Carter received a written warning for violations of the manager-notification policy because he failed to give the required notice on two different dates in December. On February 9, 2015, Carter received a three-day unpaid suspension for three more failures to notify his

2

supervisors of unscheduled absences in January. The five missed days in January and February were all approved FMLA leave. None of the disciplinary actions taken against Carter during this time period were for the absences themselves, but rather for the failure to provide timely notice to his supervisor. Spirt issues different types of warnings for violations of OP3-177 and OP3-178. An employee who is excessively absent receives an "Attendance Disciplinary Memo," whereas an employee who violates Spirit's personal misconduct policies (such as OP3-178), receives a "Disciplinary Action Form." Aplt App. Vol. 2 at 330, 615.

On February 13, 2015, Carter, along with an IAM representative, met with a Human Resources Generalist for Spirit, Laura Breese, to discuss his attendance issues. Carter asserted he did not need to comply with OP3-178 if his absences were for approved FMLA leave, but Breese and Carter's union representative clarified that he did. When Carter stated his migraines made it impossible to timely notify his managers, Breese proposed several accommodations, such as having a family member contact his supervisor on his behalf. Carter rejected these proposals but could not identify any accommodation that would allow him to comply with the policy.

On February 19, Carter left mid-shift without notifying his manager. While this would have been grounds for termination due to his prior disciplinary infractions, Spirit agreed not to discipline him for this incident. In April 2015, Carter produced a note from his doctor stating his migraines interfered with his ability to work and to comply with the manager notification policy. This prompted another meeting

3

between Carter, Breese, and another Spirit HR representative. At that meeting, Breese proposed additional potential accommodations—such as having a family member notify Carter's supervisor on his behalf, having a pre-prepared text message in his phone if he felt a migraine was coming on so that he could press "send" without looking at the phone screen, or calling his manager the night before a shift if he felt a migraine coming on. Carter rejected all of these proposals, but he presented no alternative accommodation of his own.

On June 11, Carter received another three-day suspension for two more violations of the manager-notification policy. This suspension came with a warning that any additional discipline in the next twelve months would result in termination. Carter violated the manager-notification policy once more on June 22, and he was fired on July 21.

Carter, pro se, brought suit against Spirit in September 2016, alleging violations of the FMLA and Americans with Disabilities Act (ADA). Carter amended his complaint to add as defendants the IAM, the United States Department of Labor (DOL), and Foulston Siefken, LLP ("Foulston"). Against the IAM, Carter brought a "hybrid" section 301 claim under the National Labor Relations Act, claiming the union breached its duty of fair representation in connection with his ongoing dispute with Spirit. Against the DOL, he alleged unlawful interference with his FMLA rights. Against Foulston (the law firm representing Spirit in connection with Carter's dispute) Carter asserted claims for common-law defamation and FMLA interference.

4

The district court granted dispositive motions in favor of all defendants. It granted a motion under Fed. R. Civ. P. 12(b)(6) to dismiss Carter's claims against the IAM because the statute of limitations on hybrid section 301 claims was six months, and any claim Carter might have had would have accrued in November of 2015. The court granted the DOL's motion to dismiss under Fed. R. Civ. P. 12(b)(1) because it was protected by sovereign immunity and Carter had not demonstrated a waiver thereof. The court granted a motion to dismiss filed by Foulston because its alleged defamatory statements were shielded by absolute litigation privilege, and the law firm was not Carter's "employer" as required for an FMLA interference claim. Finally, the court granted Spirit's motion for summary judgment on Carter's remaining claims, chiefly because the undisputed material facts established he was terminated not for taking FMLA leave, but for failing to comply with company policy by giving timely notice to his managers of his absences.

Carter now appeals.

## DISCUSSION

While we construe pro se arguments liberally, we "cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). To preserve an issue for appeal, it must be adequately briefed, beyond a generalized assertion of error, and include citations to supporting authority. *Id.* at 841. "[C]onclusory allegations with no citations to the record or any legal authority for support" are not considered. *Id.*

5

Although Carter lists fourteen separate issues on appeal, on review of his submissions we conclude several of the issues are identical or cumulative, and several are inadequately briefed to be considered. Issues one, seven, ten, eleven, and thirteen are identical in that they challenge the district court's dismissal of his claims against Spirit. Issues two, four, and six all assert the district court judge was improperly biased against him and should have been disqualified. Issues five and fourteen allege the district court erred in denying Carter's various requests for oral argument. Issue nine asserts the district court erred in concluding Foulston was not his "employer" under the FMLA and therefore dismissing his interference claim on summary judgment. Issues three, eight, and, twelve are inadequately briefed beyond generalized assertions of error, and so we do not consider them. *Garrett*, 425 F.3d at 840–41. Thus grouped, we consider Carter's arguments in turn.

### *Summary Judgment in Favor of Spirit (Issues 1, 7, 10, 11, 13).*

Carter challenges the district court's entry of summary judgment in favor of Spirit. The claims dismissed on summary judgment against Spirit were for ADA discrimination, FMLA interference, and retaliation under the ADA, FMLA, and Kansas workers compensation statute. "We review summary judgment decisions de novo, applying the same legal standard as the district court." *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019) (internal quotation marks omitted). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We examine the record and all reasonable inferences that

6

might be drawn from it in the light most favorable to the non-moving party." *T-Mobile Cent., LLC v. Unified Gov't of Wyandotte Cty.*, 546 F.3d 1299, 1306 (10th Cir. 2008) (internal quotation marks omitted).

To establish a prima facie case of ADA discrimination, Carter was required to show, inter alia, "that he [was] qualified, with or without reasonable accommodation, to perform the essential functions of [his] job." *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1188 (10th Cir. 2003) (internal quotation marks omitted); *see* 42 U.S.C. § 12111(8) (defining "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires"). The court must consider "the employer's judgment as to what functions of a job are essential." 42 U.S.C. § 12111(8). "We will not second guess the employer's judgment when its description is job-related, uniformly enforced, and consistent with business necessity." *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1119 (10th Cir. 2004).

To establish a claim of FMLA interference, "an employee must show that (1) he was entitled to FMLA leave, (2) an adverse action by his employer interfered with his right to take FMLA leave, and (3) this adverse action was related to the exercise or attempted exercise of the employee's FMLA rights." *Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1226 (10th Cir. 2012). An employer can defeat an FMLA interference claim "by showing that the employee would have been terminated anyway, i.e. regardless of the request for FMLA leave." *Id.* at 1227.

7

For claims of retaliation, whether brought under the ADA, FMLA, or workers compensation statute, if an employer offers a legitimate, nondiscriminatory reason for the termination, the employee must present sufficient evidence suggesting that reason is pretextual. *See Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1172 (10th Cir. 2006) ("To defeat summary judgment . . . [an employee] must show that there is a genuine dispute of material fact as to whether [the employer's] explanations for terminating her employment are pretextual.").

Carter's various claims against Spirit all failed for the same reason: he was not fired for missing work per se, but rather for failing to comply with company policy by providing timely notice when he did. This defeated Carter's ADA claims because compliance with the manager notification policy was an essential function of his position. Three Spirit employees (one human resources manager and two supervisors) attested that the notification policy was critical so that managers knew who would be working a given shift, which allowed them to meet production targets. *See Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1009 (10th Cir. 2011) ("Formal notice-of-absence policies serve an employer's legitimate business interests in keeping apprised of the status of its employees and ensuring that it has an adequate workforce to carry out its normal operations."). Further, Spirit produced evidence showing that the policy was consistently enforced regardless of whether an absence was excused. Because Carter could not and did not comply with this essential function of his position, he could not make a prima face case of ADA discrimination.

Noncompliance with the manager notification policy likewise defeated Carter's FMLA interference claims because Carter's failure to comply with company policy by providing timely notice of his absences would have caused Spirt to end his employment regardless of whether those absences were FMLA-approved. *See Brown*, 700 F.3d at 1227. As to Carter's various retaliation claims, the court concluded he could not establish the legitimate, nondiscriminatory reason offered for his firing—violating the manager-notification policy—was pretextual. *See Metzler*, 464 F.3d at 1172.

Carter does not address these claims individually on appeal. Instead, construing his appellate argument liberally, he appears to assert the manager notification policy did not apply to him, so the proffered justification for terminating him must have been false. This argument lacks record support. The manager-notification policy (OP3-178) includes a "Procedure" section, and Paragraph B of that section states:

> In the event an unexpected circumstance arises that will cause the employee to be late for work or absent, the employee must notify his/her manager within the first thirty (30) minutes of their shift. Failure to follow these requirements may result in disciplinary action, up to and including termination.

Aplt. App. Vol. 2 at 336. Paragraphs C–E set forth more procedures pertaining to unscheduled absences and late arrivals, including guidelines for progressive discipline for excessive absenteeism/tardiness. Paragraph F includes exemptions from the discipline procedures for "occurrences" outlined in paragraphs C–E,

9

including approved FMLA leave, but nothing in those exemptions refers to Paragraph *B*, the manager-notification requirement. Spirit's policies do not count approved FMLA leave toward employee discipline for excessive absenteeism, but neither do they relieve employees from the obligation to promptly notify their supervisor if they are going to miss a shift. Moreover, whatever ambiguity there may have been regarding the application of Spirit's policies to Carter was resolved as early as the February 13, 2015, meeting in which both management and his union representative clarified to Carter that he needed to comply with the notification policy even if the absence was FMLA-related. The district court properly granted summary judgment in Spirit's favor on Carter's claims for ADA discrimination, FMLA interference, and retaliation.

### *Judicial Bias (Issues 2,4,6)*

Carter asserts that the district court judge should have recused himself because he worked as an attorney at Foulston until 2002, before becoming a judge. Carter asserts the adverse rulings in his case are evidence of improper bias against him and partiality toward the defendants. *But see Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion."); *Green v. Branson*, 108 F.3d 1296, 1305 (10th Cir. 1997) ("[A]dverse rulings cannot in themselves form the appropriate grounds for disqualification." (internal quotation marks omitted)).

A party alleging judicial bias must timely move for recusal. *See United States v. Nickl*, 427 F.3d 1286, 1297–98 (10th Cir. 2005). Because Carter did not do so, we

review this claim only for plain error, *id.*, and, because Carter does not argue for plain error on appeal, we decline to reverse the district court judgment on this basis, *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130–31 (10th Cir. 2011) ("[T]he failure to argue for plain error and its application on appeal . . . surely marks the end of the road for an argument for reversal not first presented to the district court.").

### Denial of Request for Oral Argument (Issues 5, 14)

Carter asserts generally the district court erred by denying his requests for oral argument. District court limitations on oral argument are reviewed for abuse of discretion, *see United States v. Davila*, 693 F.2d 1006, 1008 (10th Cir. 1982), and we discern no abuse of discretion here. Further, Carter does not specify which request for oral argument, in particular, the district court should have granted, nor does he explain how doing so would have led to a different result in any of the dispositive rulings he now appeals.

### Dismissal of FMLA Interference Claims Against Foulston[1] (Issue 9)

In his Amended Complaint, Carter alleged Foulston, the law firm representing Spirit, was subject to legal liability as his "employer" under the FMLA because the notes from a DOL employee from a phone call with a Foulston attorney used the pronoun "they" in reference to Spirit. The district court dismissed this cause of

---

[1] In his Amended Complaint, Carter also asserted a defamation claim against Foulston, which the district court dismissed based on statute of limitations and absolute litigation privilege. Carter does not challenge this dismissal on appeal, and so we do not consider it here. *See Watts v. United States*, 220 F.2d 483, 485 (10th Cir. 1955) ("[A] point not briefed or argued may be treated as waived.").

11

action under Fed. R. Civ. P. 12(b)(6). We review this dismissal de novo. *Strauss v. Angie's List, Inc.*, 951 F.3d 1263, 1266 (10th Cir. 2020). To withstand dismissal, "a plaintiff's complaint must allege sufficient facts 'to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Assuming, without deciding, that Carter plausibly alleged Foulston acted as his "employer" under the FMLA, he nonetheless failed to plead Foulston took adverse action that interfered with his right to take FMLA leave. This serves as sufficient basis to affirm the district court's dismissal of Carter's claims on appeal.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.


Entered for the Court


Gregory A. Phillips
Circuit Judge