**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 6, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

KENA UTTER; AUBREE HOLSAPPLE;
DARA CAMPBELL,

     Plaintiffs - Appellants,

v.

AMIE ROSE COLCLAZIER; JACK
CADENHEAD; MICKEY UPTON;
INDEPENDENT SCHOOL DISTRICT
1-01 OF SEMINOLE COUNTY, STATE
OF OKLAHOMA, a/k/a SEMINOLE
SCHOOL DISTRICT,

     Defendants - Appellees.

No. 17-7002
(D.C. No. 6:16-CV-00182-RAW)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **O'BRIEN**, and **BACHARACH**, Circuit Judges.
_____

Plaintiffs Kena Utter, Aubree Holsapple, and Dara Campbell (collectively, the

Teachers) appeal the district court's dismissal of their numerous federal and state

claims against the Seminole School District (District), which is governed by the

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Seminole Board of Education (the Board), and three of the Board's five members, Amie Rose Colclazier, Jack Cadenhead, and Mickey Upton (collectively, the Board Members).[1] We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part and reverse in part.

## BACKGROUND

The Teachers worked for Seminole, Oklahoma, schools under temporary contracts that expired at the end of the 2014-15 school year. They were also covered by a collective bargaining agreement between the Seminole Association of Classroom Teachers, the District, and the Board (the CBA). Ms. Campbell was an agriculture education teacher at the high school; Ms. Holsapple was a special education counselor at the elementary school; and Ms. Utter was a first-grade teacher at the elementary school. All of the Teachers received excellent ratings on their evaluations and their principals recommended the Board rehire them for the 2015-16 school year. School Superintendent, Jeff Pritchard, concurred with these recommendations. All of the Teachers were included on a slate of teachers submitted to the Board for approval to be rehired at its June 11, 2015, meeting (the Board Meeting).

---

[1] The Teachers sued the individual Board Members in their official and individual capacities. The district court dismissed the official-capacity claims against the Board Members, which the Teachers do not challenge on appeal.

2

A week before the Board Meeting, Ms. Colclazier called Mr. Pritchard and informed him that she was inclined to join Mr. Cadenhead and Mr. Upton in voting against rehiring the Teachers. Mr. Pritchard told Ms. Colclazier he was baffled by this because he had never had any complaints against the Teachers and all had received excellent evaluations. Ms. Colclazier said Ms. Utter was late every day, Ms. Holsapple did not care about special education, and Ms. Campbell was disorganized. Ms. Colclazier said she planned to vote against a fourth teacher, Caleb Gordon, because he had supported students who had protested in favor of a school bond issue.[2]

Ms. Colclazier told Mr. Pritchard to tell the Teachers' principals to remove their names from the slate of teachers they were recommending the Board rehire. Four days later, Mr. Cadenhead went to Mr. Pritchard's office and asked if he was going to remove the Teachers from the rehire list. Mr. Pritchard said he was not. Ms. Colclazier called Mr. Pritchard later that day to say she was going to vote against rehiring the Teachers, and that he should have the Teachers' names removed from the rehire list. That evening, Mr. Upton contacted Mr. Pritchard and stated he too was going to vote against rehiring the Teachers.

At the Board Meeting, the Board Members voted to rehire all of the recommended slate of temporary teachers except the Teachers. The two other board

---

[2] The Board Members ultimately voted to rehire Mr. Gordon and he is not a party to this action.

members, Mr. Levy and Ms. Willis, voted to rehire the Teachers. Mr. Pritchard resigned as Superintendent after 32 years with the District to protest the Board Members' vote against the Teachers. He later testified that the Board Members had violated the CBA, which required, among other things, that teachers be evaluated only by principals and only while they are performing their job functions. Mr. Levy and Ms. Willis testified the Board Members had improperly evaluated the Teachers and interfered with the administrative functions of the school.

The Teachers filed a complaint in state court, which was removed to federal court by the Defendants. The Teachers' complaint included these eight claims: (I) the Defendants breached the contractual obligations set forth in the CBA; (II) the Defendants failed to comply with the Teacher Due Process Act, Okla. Stat. tit. 70, §§ 6-101.20 to .32 (TDPA); (III) the Board Members violated Oklahoma's Open Meeting Act; (IV and V) the Board Members violated their constitutional due process liberty interest rights and due process property interest rights in violation of 42 U.S.C. § 1983; (VI) the Board Members violated Ms. Campbell's First Amendment free speech rights in violation of § 1983; (VII) the Board Members retaliated against Ms. Utter for taking leave in violation of her rights under the Family and Medical Leave Act, 29 U.S.C. § 2615(a)(2) (FMLA); (VIII) the Board Members intentionally interfered with the Teachers' prospective business interests with the District.

The Defendants moved to dismiss Counts I, II, IV, and V under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. The district court granted the motion. It first dismissed Count II, ruling that the TDPA expressly excludes temporary contract teachers from coverage. *See* Okla. Stat. tit. 70, § 6-101.23(A)(3) (stating the TDPA "shall not apply to . . . [t]eachers who are employed on temporary contracts"). The court then dismissed Count I, the CBA breach of contract claim, ruling that there was no breach of the CBA because the Teachers were not covered by the TDPA. Aplt. App., Vol. I, at 84-85. The court dismissed Count V, ruling that temporary contract teachers have no due process property interest in any continuing contract, and dismissed Count IV, ruling the alleged remarks by the Board Members did not infringe on the Teachers' liberty interests in their good names and reputations.

The Teachers moved for reconsideration and clarification of the dismissal of their Count I breach of contract claim because the district court failed to address the CBA provisions that were unrelated to the TDPA. The district court denied the motion. The Teachers also requested leave to amend their complaint, which the district court denied as futile.

The district court ultimately granted the Defendants' motion for summary judgment on all of the remaining federal claims, dismissing Ms. Campbell's § 1983 First Amendment claim, and Ms. Utter's FMLA claim. The district court then remanded to state court the Oklahoma Open Meeting Act claim and the claim for intentional interference with business interest.

5

The Teachers raise four issues on appeal, challenging the district court's Rule 12(b)(6) dismissal of their CBA breach of contract claim, its grant of summary judgment in favor of the Defendants on Ms. Campbell's § 1983 First Amendment claim and Ms. Utter's FMLA claim, and the denial of their motion for leave to amend their complaint.

We review de novo a district court's dismissal of claims under Fed. R. Civ. P. 12(b)(6) and its grant of summary judgment under Fed. R. Civ. P. 56(a). *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1279-80 (10th Cir. 2013). To withstand a motion to dismiss, a complaint must allege "'enough facts to state a claim to relief that is plausible on its face.'" *Id.* at 1280 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). We assume the truth of "all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff[s]." *Id.* (internal quotation marks omitted). "Summary judgment is appropriate only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id*. at 1279 (quoting Fed. R. Civ. P. 56(a)). Under this standard, we view the evidence in the light most favorable to the nonmovant. *Id*. We also review de novo a court's denial of leave to amend on the basis that amendment would be futile. *Cohen v. Longshore*, 621 F.3d 1311, 1314 (10th Cir. 2010).

6

1. <u>Breach of Contract Claim</u>. The Teachers allege in Count I that the Defendants breached the contractual obligations in the CBA by failing to comply with provisions requiring the Board to: (a) evaluate teachers based on actual observation and knowledge while the teacher is performing her job function; (b) follow state laws and regulations regarding interference with school administration and the Open Meeting Act; and (c) not suspend, demote, or terminate any teacher without due process. As to the CBA's requirement that the Board follow state laws and regulations, some, but not all, of the state laws referenced by the Teachers in their complaint were provisions of the TDPA.

The Teachers argue on appeal the district court mischaracterized their breach of contract claim as asserting only that the CBA required compliance with the state laws related to TDPA, and thus failed to address those provisions of the CBA unrelated to the TDPA that the Defendants allegedly breached. When the Teachers moved for clarification explaining that the district court had too narrowly construed the scope of their CBA claim, the district court denied their motion on the basis that "an Oklahoma teacher on a temporary contract has no expectation of a continuing contract status." Aplt. App., Vol. III at 600 (footnote omitted). Thus, the court again failed to address all of their CBA claims. They also argue the district court failed to accept as true their allegation that the actions constituting alleged breaches of the

7

CBA occurred while they were still employed under the temporary contract. We agree with the Teachers' claims of error.[3]

The Teachers' complaint quoted several CBA provisions that they allege the Defendants breached. Notably, however, no party ever provided the district court with a copy of either the CBA or the Teachers' temporary contracts. Accordingly, the district court could evaluate the terms and provisions of the CBA only as it was described in the complaint. The Teachers contend, and the Defendants do not dispute, that the terms and provisions of the CBA apply to them, even though they are temporary teachers, because the CBA applies to all teachers, regardless of the duration of any teacher's contract.

But the Defendants argue, as they did in their Motion to Dismiss, that any rights the Teachers had under the CBA expired when their temporary contracts expired—at the end of the 2014-15 school year—which was prior to the June 11 Board Meeting. From this, they argue their actions at the Board Meeting could not have breached the CBA. Their argument rests on flawed assumptions: Even if the Teachers' rights under the CBA did expire when their temporary contracts expired— an assertion we cannot confirm without reviewing the CBA or the temporary

---

[3] The Teachers also contend they presented genuine issues of material fact that would preclude summary judgment on their CBA breach of contract claim. The breach of contract claim was dismissed under Rule 12(b)(6), prior to the Defendants' summary judgment motion, and we express no opinion in the first instance on how their breach of contract claim would fare were the Defendants to challenge it in a summary judgment motion.

8

contracts—the Teachers' allegations are not limited to the Defendants' actions taken at the Board Meeting. The Teachers' allege the Defendants breached the terms of the CBA by evaluating them, interfering with school administration, and discussing matters prior to the Board Meeting in violation of the Open Meeting Act. There is no basis in the complaint to conclude these actions occurred only after the CBA expired. Viewing the factual allegations in the light most favorable to the Teachers, they are covered by the CBA and at least some of the Defendants' actions occurred while the Teachers were protected by the CBA.

Contrary to the district court's characterization of the breach of contract claim, the Teachers' complaint alleged the Defendants breached the CBA in several ways unrelated to the TDPA. We conclude the Teachers plausibly alleged facts suggesting the Defendants breached the CBA in two such ways.

First, the Teachers allege the CBA requires that "'[e]ach [teacher] evaluation shall be based upon the evaluator's actual observation and knowledge of the teacher evaluated while performing his/her job function,'" and that "'[t]eachers will be evaluated by principals, as required by law.'" Aplt. App., Vol. I at 10 (quoting CBA Art. XI, § 11.2). The Teachers plausibly allege in their Complaint that the Defendants breached this provision because they evaluated the Teachers' performance without any actual observation or knowledge, not as the Teachers' principals, and not while the Teachers were performing their jobs.

9

Second, the Teachers allege the CBA provides in relevant part that "'[t]he Board . . . agree[s] to abide by all state and federal statutes, rulings, and regulations,'" *Id*. at 21 (quoting CBA Art. II, § 2.1). One such regulation cited by the Teachers, unrelated to the TDPA, provides that "'[t]he local board and its individual members shall refrain from involvement in or interference with administrative functions of the school.'" *Id*. at 12 (quoting Okla. Admin. Code § 210:35-3-48(a)(3)). The Teachers plausibly allege that the Board Members violated this regulation—and thus the CBA—by evaluating the Teachers based on hearsay from persons other than their principals, directing Mr. Pritchard and the principals to remove their recommendations to rehire the Teachers, and taking positions regarding rehiring the Teachers that were directly at odds with the evaluation and recommendations of the principals and Mr. Pritchard, thereby involving themselves and interfering with the schools' administrative functions. Another state law cited by the Teachers, also unrelated to the TDPA, is Oklahoma's Open Meeting Act, which prohibits secretive meetings of public bodies. The Teachers plausibly allege the Defendants breached the Open Meeting Act—and thus the CBA—when the Board Members privately discussed among themselves prior to, and outside of, the public Board Meeting, their intentions and decisions to vote against rehiring the Teachers.

The Teachers allege the district court erred in not addressing a third breach of the CBA, which they sought to assert more clearly in their motion for leave to amend,

10

namely that the CBA includes an express due process provision. According to the complaint, the CBA states that "'[n]o teacher shall be suspended, demoted, or terminated without due process,'" *Id.* at 10 (quoting CBA Art. IX, § 9.3 and Art. XI, § 11.2). The Teachers allege this CBA provision provided them due process rights with respect to the process by which their contracts were not renewed. We conclude this is not a plausible claim.

The plain language of the CBA as related by the Teachers in their complaint states that teachers are entitled to due process protection only for a suspension, demotion, or termination decision. *See id.* And it is clear from the complaint that the Teachers were not "suspended, demoted, or terminated," *id.*, but rather that their temporary teaching contracts expired at the end of the school year, and the Board did not vote to hire them under a new contract. As the district court explained, under Oklahoma law, temporary contract teachers do not have any due process right to a continuing contract. *See DeHart v. Indep. Sch. Dist. No. 1 of Tulsa Cty.*, 259 P.3d 877, 883 (Okla. Civ. App. 2011). Thus, the Teachers did not plausibly allege facts demonstrating a breach of the CBA's due process provision.

To summarize, the Teachers alleged facts sufficient to give rise to plausible breach of contract claims under the CBA's evaluation provision, Art. XI, § 11.2, and compliance-with-state-laws provision, Art. II, § 2.1, with respect to laws unrelated to the TDPA. Thus, the Rule 12(b)(6) dismissal of those claims was inappropriate. But

11

the Teachers failed to present a plausible claim that the Defendants breached the CBA's due process provision.

2. <u>Leave to Amend</u>. The Teachers challenge the district court's denial of their request to file a second amended complaint. They sought to more clearly articulate their claim that the Defendants breached the due process provision in the CBA, as described above. They also sought to more clearly articulate their claim that they were entitled to due process under Oklahoma's Constitution. And they sought to add a claim that they have a due process property interest in the renewal of their contracts based on the custom and practice of the District, which was that throughout the District's history, the Board always voted to rehire a teacher if the teacher's principal and superintendent recommended the teacher be rehired, absent financial concerns or a program change not present here. The district court denied leave, ruling further amendment would be futile.

"A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013) (internal quotation marks omitted). As stated above, the Teachers have not plausibly alleged a breach of the CBA's due process provision because the Defendants' decision not to rehire them after their temporary contracts expired was not a suspension, demotion, or termination decision under the plain language of the CBA. The Teachers' due process claim under Oklahoma's Constitution is similarly flawed. They rely upon an Oklahoma Supreme Court case holding "that Article 2,

12

Section 7 of the Oklahoma Constitution affords minimal procedural protection to persons who by *contract or law* have a limited right to hold their jobs or to be free from discipline 'unless good cause is shown.'" *Umholtz v. City of Tulsa*, 565 P.2d 15, 24 (Okla. 1977) (emphasis added). But as we have held, the Teachers have not plausibly alleged, or presented any evidence, that they had any limited property right under any contract.

The Teachers' proposed amendment asserted that they have a limited right to hold their job by law, however. They claim a property interest in renewal of their contracts based on the custom and practice of the Board, that is, that the Board's custom was to rehire temporary contract teachers when that was the recommendation of their principal.[4] Oklahoma courts have held that "[t]eachers working under temporary contracts are not afforded the due process protections of career teachers." *DeHart*, 259 P.3d at 883 (rejecting teacher's claim that the school district's conduct and custom of offering her consecutive temporary contracts created a contract of

---

[4] The Defendants assert, as they did before the district court, that the temporary contracts and the CBA "clearly state that there is no expectation to continued employment," which negates the possibility of any contrary custom and practice. Aplt. App., Vol. I at 76 (emphasis omitted); *see also* Aplee. Br. at 4, 15-16. The district court appears to have accepted that statement as true, holding it was not plausible that the District negated its "written policy" for an unwritten custom and practice. Aplt. App., Vol. III at 600. But neither the CBA nor the temporary contracts were ever made part of the record, and nothing in the record confirms that the temporary contracts or the CBA "expressly state that there is no expectation of continued employment." Aplee. Br. at 16.

continuing employment). The Teachers cite cases generally holding that the issue of whether an implied employment contract creates a property interest is generally a fact issue for a jury. But under Oklahoma law, which is the relevant law here, as a matter of law, an implied employment contract does not exist "if the alleged promises are nothing more than vague assurances." *Hayes v. Eateries, Inc*., 905 P.2d 778, 783 (Okla. 1995). In order to create an implied employment contract in Oklahoma, "the promises must be definite: Only when the promises are definite and, thus, of the sort which may be reasonably or justifiably relied on by the employee, will a contract claim be viable." *Bourke v. W. Bus. Prods., Inc*., 120 P.3d 876, 887 (Okla. Civ. App. 2005) (brackets and internal quotation marks omitted). "[V]ague assurances of continued employment will not support a finding of an implied employment agreement." *Id*.

Here, the Teachers have not even alleged vague assurances of continuing employment, let alone any definite promise. They have merely alleged that the Board has historically rehired temporary teachers when their principals so recommended. We conclude the Teachers did not plead facts sufficient to establish the formation of an implied employment contract, and thus, have not established any protectable property interest to support a due process claim. We affirm the district court's dismissal of their request for leave to file a second amended complaint.

3. FMLA Claim. Ms. Utter has an autistic son, and she obtained permission from her principal to take intermittent leave on those mornings when her son's

14

condition required her to care for him. Ms. Utter claims the Defendants retaliated against her for exercising her FMLA rights.

The district court dismissed this claim, ruling Ms. Utter failed to state a prima facie FMLA retaliation claim. The parties do not dispute that the leave Ms. Utter's principal allowed her to take to care for her autistic son qualified as permissible FMLA leave. And it is undisputed that at least Ms. Colclazier voted not to rehire Ms. Utter because she came in late some mornings as a result of taking FMLA leave. But it is also undisputed that neither Ms. Colclazier nor any of the Board Members were aware of Ms. Utter's leave agreement with her principal. Because none of the Board Members knew she was taking FMLA leave, the district court ruled Ms. Utter failed to present any evidence the Board Members' actions were motivated by the exercise of her FMLA rights, a necessary element of a prima facie FMLA retaliation claim. We agree the Defendants were entitled to summary judgment on Ms. Utter's FMLA claim.

"To make out a prima facie retaliation claim, [Ms. Utter] must show that: (1) she engaged in a protected activity; (2) [the Defendants] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action." *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007) (internal quotation marks omitted). "We have characterized the showing required to satisfy the third prong under a retaliation theory to be a showing of bad intent or 'retaliatory motive'

15

on the part of the employer." *Id.* The district court ruled Ms. Utter met the first two prongs, but failed to present evidence that satisfied the third prong—a causal connection between her FMLA leave and the Board Members' decision to not to rehire her—because it is undisputed they were unaware she was taking FMLA leave.[5]

"A causal connection is established where the plaintiff presents evidence of circumstances that justify an inference of retaliatory motive. . . ." *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002) (internal quotation marks omitted). We have held that a plaintiff cannot prove a causal connection when the decision maker took the challenged employment action without knowledge that the plaintiff was taking FMLA leave. *Sabourin v. Univ. of Utah*, 676 F.3d 950, 958-59 (10th Cir. 2012); *see also Didier v. Abbott Labs.*, 614 F. App'x 366, 378 (10th Cir. 2015) (upholding summary judgment dismissal of FMLA retaliation claim because the plaintiff did not present evidence that the persons responsible for terminating her knew she was taking FMLA leave). If knowledge is lacking, then the protected activity cannot be said to have caused the adverse employment action. *Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1195 (10th Cir. 2007) (holding, in an

---

[5] Alternatively, the district court ruled that even if Ms. Utter's evidence that Board Members did not rehire her because she came in late was sufficient to satisfy this third prong, the Board Members presented legitimate, non-discriminatory reasons for not rehiring her, namely that she often left her students without prepared lesson plans for the substitute teachers. It ruled Ms. Utter failed to present any evidence this proferred reason was pretext for FMLA retaliation. Because we agree Ms. Utter did not establish a prima facie claim, we need not reach this alternative basis for granting summary judgment.

16

Americans with Disability Act retaliation action, that "[u]nless an employer knows that an employee is engaging in protected activity, it cannot retaliate against that employee *because* of the protected conduct").

Ms. Utter argues an employer can be liable for violating FMLA even if it did not know FMLA was involved. But all of the cases she relies upon are from outside our circuit, and all but one involve FMLA interference claims, not FMLA retaliation claims, which is what she alleges.[6] The difference between an interference claim and a retaliation claim is that the latter requires evidence of discriminatory or retaliatory intent, while the former does not. *See Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1226-27, 1230 (10th Cir. 2012) (explaining that in an interference claim, "[a] deprivation of [an employee's FMLA] rights is a violation regardless of the employer's intent," but in a retaliation claim, the employee must present "circumstantial evidence of retaliatory motive"). Ms. Utter does not cite to any Tenth Circuit case in which we have held a prima facie FMLA retaliation claim was established even though the decision maker was unaware of the plaintiff's protected FMLA activity. We affirm the dismissal of Ms. Utter's FMLA claim.

---

[6] Ms. Utter also relies upon *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 295 (4th Cir. 2009), which held that an employer's notice of an FMLA-related need for leave was sufficient notice to expose the employer to liability for an FMLA retaliation claim. But unlike the facts in *Dotson*, Ms. Utter presented no evidence that the Board Members were aware she was taking *any* approved leave, let alone were aware she had any need for FMLA-related leave.

17

4. <u>First Amendment Section 1983 Claim</u>. Ms. Campbell alleges the Board Members retaliated against her for exercising her First Amendment free speech rights by voting not to rehire her because she spoke out publicly in favor of the bond issue. The bond issue was a divisive topic in Seminole; those in favor of the bond issue wanted a new high school built, those opposed wanted the existing high school remodeled. Mr. Cadenhead, Ms. Colclazier, and Mr. Upton opposed the bond issue; Mr. Pritchard and the other two board members, Mr. Levy and Ms. Willis, supported it. Ms. Campbell also supported the bond issue, and it is undisputed the Board Members were aware of her support because she appeared at board meetings in favor of it, posted her support on Facebook, and was a vocal community activist. She contends the Board Members voted not to rehire her because she spoke out in favor of the bond issue, in violation of her First Amendment rights.

It is clearly established that a public employer "cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick v. Myers*, 461 U.S. 138, 142 (1983). Adverse employment actions considered serious enough to inflict constitutional injury include refusals to renew a contract, *Board of Cty. Comm'rs, Wabaunsee Cty. v. Umbehr*, 518 U.S. 668, 685 (1996) or to rehire an employee, *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 76 (1990).

18

To balance the interests of a public employer's need for some control over an employee's words and actions with the employee's free speech rights, we employ the familiar *Garcetti/Pickering* balancing test, which consists of five factors:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Trant v. Oklahoma*, 754 F. 3d 1158, 1165 (10th Cir. 2014) (internal quotation marks omitted).

The first three factors favor Ms. Campbell, as the Defendants do not dispute that Ms. Campbell's speech in favor of the bond issue was made pursuant to her official duties, related to a matter of public concern, and the Board's interests as employer did not outweigh her free speech interests. But the district court ruled that Ms. Campbell failed to establish the fourth factor, that her speech was a motivating factor in the Board Members' decision not to rehire her. It cited the Defendants' assertions that they voted not to rehire her because they heard she was disorganized, was unsupportive of Future Farmers of America and 4-H programs, and made negative comments on social media about being an agricultural teacher. The district court did not reach the fifth factor—whether the Defendants showed they would have taken the same action absent Ms. Campbell's bond issue speech.

19

Ms. Campbell argues the district court failed to view the evidence in the light most favorable to her and instead erroneously viewed the evidence in the light most favorable to the Defendants and, indeed, improperly weighed the evidence itself. She argues she presented sufficient genuine issues of material fact to present a jury question as to whether the Defendants were motivated by her protected speech. We agree.

Ms. Campbell presented evidence that Mr. Cadenhead directly communicated with her to challenge her comments and Facebook posts in favor of the bond issue. He told Ms. Campbell her information was wrong or incorrect, and he admitted he spoke to Ms. Campbell about the bond issue to try to convince her to oppose it. Ms. Campbell testified she felt intimidated by these personal communications from a Board Member. Mr. Cadenhead admitted it was inappropriate for him to communicate directly with Ms. Campbell but did so in order to convince her to oppose the bond issue.

Mr. Pritchard testified that he believed Ms. Campbell's support for the bond issue played a role in the Board Members' vote not to rehire her and that there was no other reason for their vote. He also testified that Ms. Colclazier wanted to vote against another teacher, Caleb Gordon, because he had supported students who protested in favor of the bond issue. Ms. Campbell presented evidence from the two other Board Members, Mr. Levy and Ms. Willis, that they believed the Board Members opposed rehiring Ms. Campbell because she vocally supported the bond

20

issue.  She presented evidence that both Mr. Cadenhead and Ms. Colclazier told her prior to her support for the bond issue that she was doing an excellent job, which contradicts their subsequent statements that they voted against rehiring her because of job performance issues.  She also presented evidence that it was highly unusual for the Board Members to go against the Superintendent's and principals' recommendation to rehire a teacher, presenting evidence that throughout its history, the Board always accepted these rehire recommendations in the absence of financial concerns or program changes.

Viewing this evidence in the light most favorable to Ms. Campbell, we conclude that she presented sufficient evidence for a reasonable fact finder to infer that her comments were a motivating factor in the Board Members' decision not to rehire her.  The question of whether a public employee's speech was a motivating factor behind the employer's decision to take an adverse employment action against the employee is a question of fact for a jury to decide.  *Thomas v. City of Blanchard*, 548 F.3d 1317, 1327 (10th Cir. 2008); *Baca v. Sklar*, 398 F.3d 1210, 1218-19 (10th Cir. 2005).  We disagree with the district court's conclusion that there was *no* evidence that Ms. Campbell's speech about the bond issue was a factor in the Board Members' decision not to rehire her.  We agree with Ms. Campbell that the district court improperly weighed the disputed issues of fact, accepting as true the Defendants' assertions, and failing to credit any of her evidence.

21

The district court also ruled the Board Members were entitled to qualified immunity from Ms. Campbell's First Amendment claim both because she did not establish a First Amendment violation and because she "cited no authority showing she has a clearly established constitutional right that would prevent [the Board Members] from voting on whether to rehire her" based on her support for the bond issue. Aplt. App., Vol. III at 609.

For purposes of qualified immunity, we resolve all factual disputes in favor of the party asserting the injury. *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). As noted, Ms. Campbell has presented evidence sufficient to establish her First Amendment rights were violated. Having rejected the district court's first reason to deny qualified immunity, we also reject the latter. Ms. Campbell cited to *Pickering v. Board of Education*, which clearly established that "a teacher's exercise of [her] right to speak on issues of public importance may not furnish the basis for [her] dismissal from public employment" by members of the Board of Education who have the right to vote on that teacher's employment. 391 U.S. 563, 574 (1968). Fifty years ago, the Supreme Court held that public teachers have a First Amendment right to be free from retaliation for commenting on matters of public concern, even when the employment decision is made by members of the local Board of Education. *Id*. at 571-72. In *Pickering*, members of the Board of Education voted to discharge a public school teacher because he spoke in opposition to a bond issue they supported. The Court held that the school board

22

violated the teachers' First Amendment right to free speech by dismissing him in retaliation for his public criticism. *Id*. at 574-75. Although Ms. Campbell was not terminated, as in *Pickering*, it is clearly established that failure to renew a contract or to rehire an employee constitutes adverse action to support a First Amendment retaliation claim. *See Umbehr*, 518 U.S. at 685; *Rutan*, 497 U.S. at 76.

In sum, we affirm in part, and reverse in part, and remand. We reverse the district court's dismissal of the Teachers' CBA breach of contract claim as to the evaluation provision and the requirement that the Board follow state laws and regulations unrelated to the TDPA. We also reverse the dismissal of Ms. Campbell's § 1983 First Amendment claim. As regards the remainder of the issues raised, we affirm.

Entered for the Court

Mary Beck Briscoe
Circuit Judge